1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JEREMY CONKLIN, D.O., an individual;<br><br>Plaintiff<br><br>vs.<br><br>UNIVERSITY OF WASHINGTON MEDICINE, a Washington public health system; UW MEDICINE/NW, a Washington public benefit corporation; UNIVERSITY OF WASHINGTON MEDICAL CENTER, a Washington public hospital; UNIVERSITY OF WASHINGTON SCHOOL OF MEDICINE, a Washington public educational institution; PAUL RAMSEY, M.D., in his official capacity and individually; LESTER PERMUT, M.D., in his official capacity and individually; SEATTLE CHILDREN'S HOSPITAL, a Washington non-profit corporation; CHILDREN'S UNIVERSITY MEDICAL GROUP, a Washington pediatric group; MARY BRIDGE CHILDREN'S FOUNDATION, a Washington public benefit corporation; AMERICAN BOARD OF THORACIC SURGERY, INC., an Illinois non-profit corporation; THORACIC SURGERY DIRECTORS ASSOCIATION, INC., a North Carolina non-profit corporation; and ACCREDITATION COUNCIL FOR GRADUATE MEDICAL EDUCATION, an Illinois non-profit corporation; | NO. 2:18-cv-00090<br><br>COMPLAINT FOR DAMAGES<br><br>JURY DEMAND |

COMPLAINT FOR DAMAGES – 1

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

Defendants

Dr. Jeremy Conklin, D.O., ("Plaintiff"), by and through his attorneys of record, HKM Employment Attorneys, LLP, requests damages, attorney's fees, and costs for the wrongful conduct of the Defendants as set forth below:

## PARTIES

1. Jeremy Conklin, D.O. is a resident of the state of Texas. He is an osteopathic physician and 2017 applicant to the University of Washington School of Medicine's ("UWSOM's") congenital cardiothoracic surgery (also known as pediatric cardiac surgery and hereafter referred to as "CCS") fellowship (hereafter, "the fellowship") which is a paid position supported by Graduate Medical Education ("GME") funding from Medicare pursuant to the Social Security Act of 1965 ("SSA").

2. Defendant UW Medicine ("UWMed") is a public health system located in Seattle. UWMed owns and operates Defendant University of Washington Medical Center ("UWMC"), a public hospital located in Seattle that provides training to GME residents and fellows, including the fellowship at issue in this case. UWMed also owns and/or operates the following hospitals, clinics, and groups: Harborview Medical Center, Northwest Hospital and Medical Center, Valley Medical Center, UW neighborhood Clinics, UW Physicians, and Airlift Northwest.

3. Defendant UW Medicine/Northwest is a Washington public benefit corporation located in Seattle and an affiliated entity of Defendant UWMed.

4. Defendant UWSOM is a public medical school with its main campus located in Seattle. UWSOM offers the fellowship that is at issue in this case.

5. Defendant Paul G. Ramsey, M.D. is an individual residing in the state of

Washington. Dr. Ramsey is the Chief Executive Officer of UWMed, Executive Vice-President for Medical Affairs and Dean of UWSOM.

6. Dr. Ramsey knowingly and willingly participated in the discrimination and knowing and willful violations of RCW 70.41.235.

7. Defendant Lester C. Permut, M.D. is an individual residing in the state of Washington. Dr. Permut is the Program Director for the fellowship that is the subject of the claims herein. Dr. Permut is employed by or affiliated with UWSOM, UWMED, UWMC, UW MED/NW, SCH, and MBCF.

8. Dr. Permut knowingly and willingly participated in the discrimination and knowing and willful violations of RCW 70.41.235.

9. Defendant SCH is a Washington non-profit corporation located in Seattle. UWSOM offers the fellowship that is the subject of the claims herein and for which Plaintiff applied in 2017 at SCH. UWSOM and SCH are affiliated with one another, but are not commonly owned.

10. Defendant Children's University Medical Group is a non-profit pediatric group practice established to support the academic, research and clinical missions of its corporate members, UWSOM and SCH.

11. Mary Bridge Children's Foundation ("MBCF") is a Washington public benefit corporation located in Tacoma. The fellowship includes training at MBCF. UWSOM and MBCF are affiliated with one another, but are not commonly owned.

12. The Defendants named in paragraphs 2-11 of this Complaint are referred to collectively herein as "UW" or "UW Defendants" for no other purpose than ease and efficiency. If referred to individually, each Defendant will be referred to specifically and separately or as "each".

13. Defendant American Board of Thoracic Surgery, Inc. ("ABTS") is an Illinois non-profit corporation. ABTS board certifies medical doctors who specialize in thoracic surgery. ABTS operates from a main office in Chicago, Illinois.

14. Defendant Thoracic Surgery Directors Association ("TSDA") is a North Carolina non-profit corporation. The TSDA operates the match program utilized by UWSOM and other medical schools and hospitals that are accredited by the Accreditation Council for Graduate Medical Education ("ACGME"). The TSDA match requires ABTS board certification in thoracic surgery for fellowships in CCS,

including the fellowship. TSDA operates from a main office in Chicago, Illinois, which it shares with its affiliated entity ABTS.

15. Defendant ACGME is an Illinois non-profit corporation. The AGCME sets requirements for and accredits the fellowship that is the subject of this lawsuit.

16. UWSOM must comply with ACGME accreditation requirements to remain accredited.

17. The ACGME accreditation requirements are in conflict with RCW 70.41.235, the Washington statute that is the impetus of this lawsuit. As a result, UW chose to violate Washington law rather than risk UWSOM's accreditation.

## VENUE AND JURISDICTION

18. This Court has jurisdiction pursuant to federal question jurisdiction as authorized under 28 U.S.C. §1331 for Plaintiff's claims against Defendants for violations of federal anti-trust laws; the Sherman Act, 15 U.S.C. §1, and Clayton Act, 15 U.S.C §12.

19. This Court has supplemental jurisdiction of Plaintiff's state law claims under 28 U.S.C. §1367.

20. Venue is proper because the fellowship is located in Seattle, Washington and each of the Defendants conducts business in Seattle, Washington.

21. Plaintiff provided a Notice of Claim to UW as a prerequisite to filing this lawsuit, which UW rejected. More than 60 days have elapsed since UW received Plaintiff's Notice of Claim.

22. Plaintiff also submitted a complaint to the Federal Trade Commission under the Federal Trade Commission Act.

## FACTS

23. There are two different categories of physicians who may practice medicine in the United States; allopathic physicians, referred to as medical doctors ("MDs"), and osteopathic physicians ("DOs"). Both are fully licensed physicians, trained in diagnosing and treating illnesses and disorders, and in providing preventive care.

24. Physicians apply for privileges to practice medicine at hospitals, which require them to be licensed in the state they are practicing and be board certified by a recognized professional organization in the field of medicine they practice.

25. Physicians in GME training become board certified by completing residencies and fellowships in their field of medicine. Accredited GME training programs are funded by Medicare dollars.

26. There are two organizations in the United States that accredit GME training; the ACGME, which accredits MD programs, and the American Osteopathic Association ("AOA"), which accredits DO programs.

27. UW receives Medicare funding for its GME training and is the largest sponsor of GME in the northwestern United States, including Washington, Wyoming, Alaska, Montana, and Idaho. UW trains approximately 1350 residents and fellows each year. It has 25 residency programs and 76 fellowship programs, and ranks 7th nationally in number of programs and 8th nationally in number of trainees.

28. There are twelve (12) ACGME accredited CCS fellowships in the United States that provide GME training in CCS, one of which is the UW fellowship.

29. The ACGME has established eligibility criteria for applicants to enter one of the twelve accredited CCS fellowship programs.

30. To apply for one of the twelve accredited CCS fellowship programs, including the UW fellowship, an applicant must apply through the TSDA match program.

31. The TSDA has established its own eligibility criteria for participation in its match program, which is stricter than the ACGME requirements and includes board eligibility and/or certification by the ABTS.

32. The ABTS is the only organization in the United States that provides board certification and access to ACGME accredited CCS training.

33. DOs who completed AOA accredited training cannot be board certified by the ABTS because it only board certifies ACGME accredited training.

34. The ACGME does not offer accreditation to DOs in CCS.

35. Because ABTS board eligibility or certification is required by the TSDA match program and the ABTS does not board certify DOs with AOA accredited training, DOs with AOA accredited training are unable to become congenital cardiothoracic surgeons.

36. Plaintiff has the following educational degrees: B.S. in Biology, Masters in

Public Health, Masters of Business Administration, and Doctor of Osteopathic Medicine.

37.  Plaintiff honorably served in the Army and Air Force as a Medical Specialist and Medical Officer practicing medicine and teaching courses. Plaintiff is entitled to veteran's preference, when applicable, for his military service.

38. Plaintiff obtained his medical license in Pennsylvania in 2006, which remains current. He is also licensed in two other states and has applied for a Washington license through the Interstate Medical Licensure Compact.

39. Plaintiff is board certified by the American Osteopathic Board of Surgery ("AOBS") in general surgery, critical care, and cardiothoracic surgery. He is a Fellow of the American College of Osteopathic Surgeons and a member of the AOA, the American College of Surgeons, and the Society of Thoracic Surgeons.

40. The AOBS board certification in cardiothoracic surgery is the DO equivalent to the ABTS board certification for MDs.

41. The TSDA match program does not recognize the AOBS board certification in cardiothoracic surgery as equivalent to ABTS board certification in cardiothoracic surgery. Therefore, applicants who are equivalently trained and board certified by the AOBS are not eligible for the TSDA match program.

42.  Plaintiff has completed residency/fellowships in general surgery and surgical critical care/trauma, which are AOA accredited, and in cardiothoracic surgery, which is ACGME accredited.

43. Plaintiff was a CCS fellow in an unaccredited training program at the University of Texas ("UT") Southwestern Children's Medical Center, a top-rated hospital in the United States ranked higher than UW, from July 2016 to August 2017. He did not complete the fellowship due to no fault of his own; the program terminated upon the departure of the two training physicians. UT has agreed to pay for a replacement fellowship due to the program's sudden unexpected termination.

44. Plaintiff applied for the UW fellowship through the TSDA match program in 2017. He had also applied in 2015 and 2016. He was not matched with a position each time he applied. The focus of this lawsuit is specifically his 2017 application.

45. UW rejected Plaintiff's 2017 application because he did not meet the

TSDA eligibility requirements because he was not ABTS board eligible or certified (i.e. because he was a DO who completed an AOA accredited general surgery residency and not an MD who completed ACGME accredited training).

46. Plaintiff is board certified in the osteopathic equivalent to the ABTS board certification required by the TSDA.

47. In 2017, Plaintiff attempted to obtain a waiver from the ABTS for board eligibility/certification since he holds the equivalent AOBS board certification. ABTS denied Plaintiff's request for a waiver.

48. Plaintiff also filed an appeal with the TSDA in 2017. The TSDA has not responded to Plaintiff's appeal.

49. Upon rejection, Plaintiff inquired with UW as to the reason for his rejection. The UW responded with only one reason: Plaintiff is not eligible because he is not ABTS board eligible or certified.

50. After his rejection but before the match took place, Plaintiff, through his attorney, filed a complaint with UW and sought reconsideration of his application. UW, through the Attorney General's Office, denied his request for reconsideration.

51. Plaintiff is eligible and qualified for the fellowship other than the fact that he is not ABTS board certified.

52. UW rejected Plaintiff for the fellowship even though he was equivalently board certified, entitled to veteran's preference, and his GME training would have been at no cost to UW.

## CLAIMS

### *First Cause of Action: Discrimination*
### *RCW 70.41.235*
### *(Against UW)*

53. Plaintiff realleges the facts as set forth in paragraphs 1-52 of his Complaint as though fully set forth herein.

54. In 2017, Plaintiff applied for the fellowship.

55. Plaintiff was automatically rejected because he was not board eligible or certified in cardiothoracic surgery by the ABTS.

56. UW only considers applicants with ABTS board eligibility or certification in cardiothoracic surgery for the fellowship.

57. UW rejects applicants with AOBS board eligibility or certification in

cardiothoracic surgery for the fellowship.

58. The ACGME requires ACGME accreditation and ABTS board eligibility or certification in cardiothoracic surgery for its accredited CCS fellowships.

59. The ACGME rules do not allow AOBS board certified physicians to enter their accredited GME training programs.

60. The ABTS and AOBS certifications in cardiothoracic surgery require similar education and training.

61. The ABTS and AOBS certifications in cardiothoracic surgery are equivalents.

62. The ABTS only board certifies physicians who have completed ACGME accredited training.

63. The ABTS will not board certify physicians who have completed AOA accredited training.

64. The ABTS only board certifies MDs.

65. The ABTS will not board certify DOs who completed AOA accredited training.

66. The ABTS will not board certify Plaintiff.

67. If Plaintiff was an MD, he would be eligible for ABTS board certification and/or ABTS would board certify his cardiothoracic surgery training.

68. Because Plaintiff is a DO, who completed AOA accredited training, he is not eligible for ABTS board certification in cardiothoracic surgery.

69. ABTS board eligibility or certification in cardiothoracic surgery is required by the TSDA match program, which UW utilizes for the fellowship.

70. AOBS board certification in cardiothoracic surgery is not accepted by the TSDA match program.

71. Only physicians who completed ACGME training may be ABTS board eligible or certified in cardiothoracic surgery.

72. DOs, who completed AOA accredited training, may not be ABTS board eligible or certified in cardiothoracic surgery.

73. Only physicians who completed ACGME accredited training are eligible for the TSDA match program.

74. DOs, who completed AOA accredited training, are not eligible for the TSDA match program.

75. Plaintiff is not eligible for the TSDA match program.

76. Plaintiff is not eligible for the TSDA match program because he is not ABTS board eligible or certified in cardiothoracic surgery.

77. Plaintiff is not eligible for the TSDA match program because he is AOBS board certified in cardiothoracic surgery.

78. Plaintiff is not eligible for the TSDA match program because he is not an MD.

79. Plaintiff is not eligible for the TSDA match program because he is a DO, who completed AOA accredited training.

80. If Plaintiff was an MD, he would be ABTS board eligible or certified in cardiothoracic surgery.

81. If Plaintiff was ABTS board eligible or certified, he would be eligible for the TSDA match program.

82. Therefore, if Plaintiff was an MD, he would be eligible for the TSDA match program.

83. But, because Plaintiff is a DO, who completed AOA accredited training, he is not eligible for the TSDA match program.

84. Because Plaintiff is not eligible for the TSDA match, Plaintiff is not eligible for the fellowship.

85. If Plaintiff was eligible for the TSDA match, he would be eligible for the fellowship.

86. If Plaintiff was ABTS board eligible or certified in cardiothoracic surgery, he would be eligible for the TSDA match and therefore, eligible for the fellowship.

87. If Plaintiff was an MD, he would be ABTS board eligible or certified in cardiothoracic surgery, and therefore, eligible for the TSDA match and therefore, eligible for the fellowship.

88. Only physicians who completed ACGME accredited training, are eligible for the fellowship.

89. DOs, who completed AOA accredited training are not eligible for the fellowship.

90. Plaintiff is not eligible for the fellowship because he is not an MD.

91. Plaintiff is not eligible for the fellowship because he is a DO, who completed

1 AOA accredited training.

2   92. RCW 70.41.235 precludes public hospitals from discriminating against DOs based on board certification.

3   93. RCW 70.41.235 applies to hospital privileges, hiring, and training.

4   94. The purpose of RCW 70.41.235 is to prevent discrimination of DOs and/or the preference of MDs over DOs in the training and practice of medicine.

5   95. UW has violated RCW 70.42.235 by discriminating against DOs based on board certification.

6   96. UW has violated RCW 70.42.235 by discriminating against Plaintiff based on board certification.

7   97. UW has violated RCW 70.41.235 by preferring MDs over DOs in the training and practice of medicine.

8   98. UW's use of the TSDA match program and contract with the TSDA violates RCW 70.41.235 and is against public policy.

9   99. UW's rejection of Plaintiff's application for the fellowship violates RCW 70.41.235 and is discriminatory.

10   100. As a result of UW's violation of RCW 70.41.235, Plaintiff has been damaged in an amount to be proven at trial. Each of the UW Defendants is jointly and severally liable for Plaintiff's damages as a result of UW's discrimination.

*Second Cause of Action: Declaratory Judgment*
*29 U.S.C. §§2201-2202; FRCP 57*
*(Against All Defendants)*

   101. Plaintiff realleges the facts as set forth in paragraphs 1-100 of his Complaint as though fully set forth herein.

   102. The Declaratory Judgment Act and FRCP 57 provide a remedy for ongoing statutory violations.

   103. UW has discriminated against Plaintiff and other DOs in violation of RCW 70.41.235 since its enactment in 1995 by only training and hiring MDs for GME programs using the TSDA match program, which requires ABTS board certification, which requires ACGME accredited training.

   104. Likewise, UW has violated RCW 70.41.235 by contracting with the TSDA and agreeing to train and hire only ABTS board eligible or certified physicians, which means MDs, and AOA accredited DOs cannot be hired/trained.

105. Declaratory judgment that it is unlawful for UW to reject DOs, including Plaintiff, for the fellowship, or any position requiring ABTS board eligibility or certification, because they do not have ABTS board eligibility or certification, is necessary to end UW's discriminatory practices, which are specifically prohibited by RCW 70.41.235.

106. Therefore, the Court should also declare that UW discriminated against Plaintiff by rejecting his application because he was not ABTS board eligible or certified.

107. Additionally, any position offered at UW requiring ABTS board eligibility or certification without recognizing its DO equivalent should be declared discriminatory.

108. Any requirement of ABTS board eligibility or certification at UW that does not recognize the DO equivalent board certification should be declared void and against public policy.

109. Additionally, to further the purpose of RCW 70.41.235, the Court should declare that the AOBS and ABTS board certifications are equivalents and that any DO board certified specialty is the equivalent of the MD board certified specialty and the Court should require UW to recognize these equivalents in all training and hiring.

*Third Cause of Action: Injunctive Relief*
*FRCP 65*
*(Against All Defendants)*

110. Plaintiff realleges the facts as set forth in paragraphs 1-109 of his Complaint as though fully set forth herein.

111. The discrimination described herein is ongoing and is a contractual requirement between UW and ACGME and UW and TSDA.

112. UW's GME training is accredited by the ACGME.

113. The majority of UW's accredited GME residency and fellowship training positions use a match process as required by the ACGME.

114. The majority of UW's accredited GME residency and fellowship training positions are matched in March of each year, including in 2018.

115. The TSDA match for the fellowship will be utilized by UW again in 2018, with the application process beginning in July.

116. UW will begin placing physicians for ACGME accredited GME training in the immediate future.

117. UW will continue discriminating against DOs in its match process if an injunction (preliminary and permanent) is not issued in this matter.

118. The discrimination will cause irreparable harm to Plaintiff and other DOs again by not allowing them training and a future job opportunity in the medical specialty of their choosing.

119. The discrimination will also cause further irreparable harm to the general public by limiting access to DO physicians in certain medical fields.

120. The public is being deprived of a choice of physicians and of quality physicians due to UW's discrimination.

121. Therefore, injunctive relief prohibiting further discrimination of DOs by UW is necessary to protect Plaintiff and others.

122. An adequate remedy at law does not exist in order to address the discrimination against Plaintiff and the numerous other DOs discriminated against since 1995 and therefore, injunctive relief precluding the discrimination is necessary and it is in the public interest to stop the discrimination.

123. An adequate remedy at law does not exist to remedy Plaintiff's damages regarding the loss of education, training, and future job opportunities he would have obtained had he been selected for the fellowship and not discriminated against.

124. Injunctive relief requiring that the Defendants cease discriminatory practices that violate RCW 70.41.235 is necessary to stop the harmful impact of DO discrimination on Plaintiff, other DOs, and society in general.

125. Injunctive relief requiring UW to withdraw from the TSDA match program until board certification of DOs and MDs are considered equivalent by the TSDA and ACGME is necessary to prevent further violations of RCW 70.41.235.

126. Injunctive relief requiring UW to recognize DO board certification equivalents to those of MDs in all training and hiring is necessary to prevent further violations of RCW 70.41.235.

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

### Fourth, Fifth, and Sixth Causes of Action:
### Anti-Trust (Federal and State)
### Sherman Act, 15 U.S.C. §1; Clayton Act, 15 U.S.C. §12;
### RCW 19.86 et seq.
### (*Against All Defendants*)

127. Plaintiff realleges the facts and allegations as set forth in 1-126 of his Complaint as though fully set forth herein.

128. Applicants for ABTS board certification must have completed ACGME accredited training in general surgery, thoracic surgery fellowship and congenital cardiac surgery fellowship.

129. These criteria prevent DOs who completed AOA accredited training from participating in the TSDA match or applying for ABTS board certification.

130. Furthermore, applicants who completed training outside the United States are also prevented from participating in the TSDA match or applying for ABTS board certification.

131. The Defendants are controlling and limiting access to who may become ABTS board certified in CCS and therefore, controlling, restraining trade, and stifling competition on who may work as a congenital cardiac surgeon.

132. Because Plaintiff completed an AOA accredited general surgery residency, he is not eligible for ABTS board certification.

133. Because Plaintiff did not complete an ACGME accredited general surgery residency, he is not eligible for ABTS board certification.

134. Because Plaintiff is not eligible for ABTS board certification, he is not eligible for the TSDA match program.

135. Because Plaintiff is not eligible for the TSDA match program, he is not eligible for an accredited CCS fellowship.

136. Because Plaintiff is not eligible for an accredited CCS fellowship, he is unable to work and earn a living as a congenital cardiothoracic surgeon.

137. DOs, who completed AOA accredited training cannot work and earn a living as congenital cardiothoracic surgeons.

138. DOs, who completed AOA accredited training cannot work and earn a living as congenital cardiothoracic surgeons because of the market control and restraint of trade exercised by Defendants.

139. Such a restraint of trade affects interstate commerce because DOs are excluded from certain medical practice specialties and the general public does not have access to them.

140. The Defendants conspired to exclude DOs from training in and becoming congenital cardiothoracic surgeons.

141. Every contract or conspiracy that unreasonably restrains trade is an antitrust violation under federal and state law.

142. By contracting with the ACGME and TSDA and participating in the TSDA match program, which restrains trade, UW is violating state and federal anti-trust laws, including 15 U.S.C. §1, 15 U.S.C §12, and RCW 19.86 *et seq.*

143. By creating eligibility requirements that applicants must be ABTS board eligible, the ACGME, ABTS, and TSDA prevent DO applicants, who completed AOA accredited training and foreign trained applicants from participating in CCS training and board certification thereby stifling competition in violation of state and federal anti-trust laws, including 15 U.S.C. §1, 15 U.S.C §12, and RCW 19.86 *et seq.*

144. By conspiring to exclude DOs from medical specialties, Defendants are violating anti-trust laws.

145. Plaintiff has been damaged by Defendants' anti-trust violations in an amount to be proven at trial.

146. Plaintiff is also entitled to treble damages and attorney's fees and costs pursuant to 15 U.S.C §12, and RCW 19.86 *et seq.*

147. The Defendants are jointly and severally liable for their anti-trust violations and damages caused to Plaintiff as a result.

### *Seventh Cause of Action: Civil Conspiracy/Collusion*
### *(Against All Defendants)*

148. Plaintiff realleges the facts and allegations as set forth in paragraphs 1-147 of his Complaint as though fully set forth herein.

149. Defendants have an agreement to deprive DOs from employment as cardiac surgeons, which is discriminatory under Washington law.

150. Defendants have been made aware of Washington law protecting DOs from discrimination in favor of MDs, yet Defendants continued to conspire to discriminate against DOs.

151. Defendants have engaged in collusion and civil conspiracy.

152. As a result of their conspiracy, Plaintiff has been damaged in an amount to be proven at trial.

153. The Defendants are jointly and severally liable for their conspiracy and damages caused to Plaintiff as a result.

### Eighth Cause of Action: Public Records Act
### RCW 42.56 et seq.
### (Against UW)

154. Plaintiff realleges the facts set forth in paragraphs 1-153 of his Complaint as though fully set forth herein.

155. Plaintiff made a public records request to UW on November 16, 2017, pursuant to RCW 42.56 *et seq.* seeking further information and documents evidencing the UW's violations of RCW 70.41.235 and all of the Defendants' roles relating to the same.

156. Plaintiff also sought information that may quantify the number of DOs rejected from GME training at UW based on their board eligibility and/or certification.

157. Plaintiff's request included the following: (1) all agreements between UWMC and the Thoracic Surgery Director's Association and/or American Board of Thoracic Surgery; (2) all Medicare funding information, grants, agreements, etc. regarding UW Medical Center's Medicare grants for residencies and fellowships; (3) all documents regarding any osteopathic physician application (individual or in general) to any residency or fellowship at UW Medical Center for the past 10 years, including but not limited to applications, correspondence, inter office emails or memos, etc.; (4) all documents regarding Dr. Jeremy Conklin's applications to the UW Medical center for residency/fellowship; (5) all documents regarding RCW 70.41.235 from 1995 to present; (6) all documents regarding osteopathic physicians as residents/fellows at UW Medical Center, including any lists of all residents and fellows and their professional titles (DO V. MD), selected over the past 10 years. Documents were defined to include any data, including but not limited to emails and text messages, memos, letters, agreements, applications, photographs, social media posts, meeting minutes, spreadsheets, presentations, notes, pamphlets, etc., whether in electronic or handwritten form.

158. UW responded five business days later on November 27, 2017, and estimated that it would produce documents by December 18, 2017.

159. On December 18th, however, UW advised Plaintiff that it would need an additional four months, until April 27, 2018, to produce the documents requested..

160. Either the original estimate was not reasonable or the subsequent estimate was a litigation tactic. In conformance with RCW 42.56., Plaintiff immediately objected that the length of time was unreasonable. UW did not respond nor has it produced any of the documents.

161. The documents requested are voluminous and estimated to be in the thousands, if not tens of thousands.

162. UW has violated RCW 42.56 *et seq*. and is liable for $100 per document per day for the documents not timely (or at all as of the date of filing this Complaint) provided to Plaintiff, plus attorney's fees and costs.

*Ninth Cause of Action:*
*Intentional Infliction of Emotional Distress*
*(Against All Defendants)*

163. Plaintiff realleges the facts as set forth in paragraphs 1-162 of his Complaint as though fully set forth herein.

164. Defendants engaged in extreme and outrageous conduct by discriminating against Plaintiff and all DOs, conspiring, and restraining trade in CSS.

165. Defendants' conduct caused Plaintiff extreme emotional distress and he has been damaged in an amount to be proven at trial. Defendants are jointly and severally liable for the damages Plaintiff has suffered as a result of their Intentional infliction of emotional distress.

*Tenth Cause of Action:*
*Negligent Infliction of Emotional Distress*
*(Against All Defendants)*

166. Plaintiff realleges the facts as set forth in paragraphs 1-165 of his Complaint as though fully set forth herein.

167. Defendants engaged in conduct they knew or should have known would cause Plaintiff distress when they wrongfully discriminated against him, restrained trade, and conspired to exclude DOs from GME training and the CCS specialty.

168. Defendants' actions caused Plaintiff extreme emotional distress and he has

been damaged in an amount to be proven at trial. Defendants are jointly and severally liable for the damages Plaintiff has suffered as a result of their negligent infliction of emotional distress.

## JURY TRIAL DEMAND

169. Pursuant to Fed. R. Civ. Pro. 38(b), Plaintiff demands a jury trial.

## PRAYER FOR RELIEF

Having plead his claims under state and federal law, Plaintiff prays for the following relief:

170. An award of damages for discrimination against each of the UW Defendants, jointly and severally, and for Plaintiff in an amount to be proven at trial;

171. An award of treble damages and attorney's fees and costs for state and federal antitrust violations against Defendants, jointly and severally, and for Plaintiff in an amount to be proven at trial;

172. An award of damages for collusion/civil conspiracy against Defendants, jointly and severally, and for Plaintiff in an amount to be proven at trial;

173. An award of damages for intentional and/or negligent infliction of emotional distress against Defendants, jointly and severally, and for Plaintiff in an amount to be proven at trial;

174. An award of damages against each of the UW Defendants, jointly and severally, at a rate of $100 per document per day plus attorney's fees and costs against UW and for Plaintiff for failure to produce documents requested under the Public Records Act;

175. An injunction prohibiting UW from any further discrimination against DOs;

176. An injunction prohibiting UW from using the TSDA match program and restraining UW from matching any residents or fellows to any ACGME accredited GME training position without considering DOs and recognizing their equivalent board certifications;

177. Declaratory Judgment that UW has been discriminating against DO GME applicants since 1995, and specifically against Plaintiff, by applying the ACGME and TSDA criteria, which excludes DOs in violation of RCW 70.41.235;

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington 98101
(206) 838-2504

178. Declaratory Judgment that it is unlawful and discriminatory for UW to reject DOs based on the lack of ABTS board certification or ACGME accreditation and that UW shall recognize DO and MD board certification equivalents, including certification by the ABTS and AOBS;

179. Declaratory Judgment that the contract between UW and ACGME and UW and TSDA is void as discriminatory and against the public policy of Washington state;

180. An award of attorney's fees and costs; and

181. Such other relief as available under the statutes and/or the Court deems just and equitable.

DATED THE 22nd DAY OF JANUARY 2018.

HKM Employment Attorneys, LLP

s/Kristi Favard
Kristi Favard, WSBA No. 34419
kfavard@hkm.com

HKM Employment Attorneys, LLP
600 Stewart Street, Suite 901
Seattle, WA 98101
Phone: (206) 838-2504
Facsimile: (206) 260-3055
*Attorneys for Plaintiff*

# DECLARATION OF SERVICE

I certify under penalty of perjury that I have contacted ABC Legal Messengers for Service/Delivery of the Complaint, Motion for Preliminary Injunction, Declaration of Dr. Jeremy Conklin, and Proposed Order to Defendants at the following addresses:

**University of Washington School of Medicine**
**University of Washington Medical Center**
**University of Washington Medicine**
**Dr. Paul Ramsey, M.D.**
**Dr. Lester Permut, M.D.**
Attorney General Bob Ferguson
c/o Colin Caywood, Asst. Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104

**UW Med/Northwest**
c/o Margaret Peyton
701 5th Avenue, Suite 700
Seattle, WA 98104-7028

**Dr. Paul Ramsey, M.D.**
**Dr. Lester Permut, M.D.**
**University of Washington Medicine**
**University of Washington School of Medicine**
**University of Washington Medical Center**
c/o Dr. Ramsey
CEO of UW Medicine and Dean of UW School of Medicine
1959 NE Pacific Avenue
Seattle, WA 98105

**Dr. Lester Permut**
Seattle Children's Hospital
Pediatric Cardiology
4800 Sand Point Way NE
Seattle, WA 98105

**Seattle Children's Hospital**
**Dr. Lester Permut, M.D.**
c/o Senior Vice-President and General Counsel
4800 Sand Point Way NE
Seattle, WA 98105

**Children's University Medical Group**
c/o Robert Sawin, M.D., Chairman of the Board
4500 Sand Point Way NE
Seattle, WA 98105

**Mary Bridge Children's Foundation**
c/o Mark Gary
222 North J Street #B
Tacoma, WA  98403

**Accreditation Council of Graduate Medical Education**
c/o Corporate Services Company
300 Deschutes Way South, Suite 304
Tumwater, WA  98501

**Thoracic Surgery Directors Association, Inc.**
c/o Mark Iannettoni, Registered Agent
115 Heart Drive
Greenville, NC  27834

**American Board of Thoracic Surgery, Inc.**
Patricia Watson, Registered Agent
633 N Saint Clair Street, 23rd Floor
Chicago, IL  60611

Dated this 22nd Day of January, 2018 in Everett, WA.


/s/ Kristi Favard

Kristi Favard, WSBA No. 34419

COMPLAINT FOR DAMAGES – 20

HKM EMPLOYMENT ATTORNEYS LLP
600 Stewart Street, Suite 901
Seattle, Washington  98101
(206) 838-2504