UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JEREMY CONKLIN,

    Plaintiff,

v.

UNIVERSITY OF WASHINGTON
MEDICINE, *et al.*,

    Defendants.

CASE NO. C18-0090RSL

ORDER GRANTING IN PART
PROVIDER DEFENDANTS'
MOTION TO DISMISS

Plaintiff, a Doctor of Osteopathic Medicine ("DO"), applied for a congenital cardiac surgery ("CCS") fellowship sponsored by the University of Washington School of Medicine in 2015, 2016, and 2017. His application was rejected each time. After the 2017 rejection, plaintiff wrote to the program director suggesting that his application should be given preferential treatment under RCW 73.16.010 because he is a veteran. The program director responded that his application had been rejected because he did not meet one of the eligibility requirements, namely "[c]ertification or eligibility for certification by the American Board of Thoracic Surgery." Dkt. # 4-1 at 21. Plaintiff alleges that the defendants' conduct violated state and federal anti-trust laws, discriminated against him in violation of RCW 70.41.235, violated the Washington

ORDER GRANTING IN PART
PROVIDER DEFENDANTS'
MOTION TO DISMISS

Public Records Act, constituted a civil conspiracy, and negligently inflicted emotional distress. The provider defendants associated with the University of Washington (named in the Second Amended Complaint as University of Washington Medicine, UW Medicine/NW, University of Washington Medical Center, University of Washington School of Medicine, Paul Ramsey, Lester Permut, Children's University Medical Group, and Seattle Children's Hospital) seek dismissal of all claims asserted against them.

The question for the Court on a motion to dismiss is whether the facts alleged in the complaint sufficiently state a "plausible" ground for relief. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).

> A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Plausibility requires pleading facts, as opposed to conclusory allegations or the formulaic recitation of elements of a cause of action, and must rise above the mere conceivability or possibility of unlawful conduct that entitles the pleader to relief. Factual allegations must be enough to raise a right to relief above the speculative level. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Nor is it enough that the complaint is factually neutral; rather, it must be factually suggestive.

<u>Somers v. Apple, Inc.</u>, 729 F.3d 953, 959-60 (9th Cir. 2013) (internal quotation marks and citations omitted). All well-pleaded allegations are presumed to be true, with all reasonable inferences drawn in favor of the non-moving party. <u>In re Fitness Holdings Int'l, Inc.</u>, 714 F.3d 1141, 1144-45 (9th Cir. 2013). If the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim, dismissal is appropriate. <u>Shroyer v. New Cingular Wireless Servs., Inc.</u>, 622 F.3d 1035, 1041 (9th Cir. 2010).

ORDER GRANTING IN PART
PROVIDER DEFENDANTS'
MOTION TO DISMISS

Having considered the allegations of the Second Amended Complaint, the submissions of the parties, and the remainder of the record,[1] the Court finds as follows:

**A. Antitrust Claims**

In order to state an antitrust claim under federal law, plaintiff must plead sufficient facts to state a plausible antitrust injury. "Antitrust injury" means "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc., 429 U.S. 477, 489 (1977). The Supreme Court, after considering the legislative history, concluded that Congress' concern when enacting the antitrust laws was "the protection of competition, not competitors." Brown Shoe Co. v. United States, 370 U.S. 294, 320, (1962). A plaintiff seeking to recover damages under the antitrust laws must show

> that his loss flows from an anticompetitive aspect or effect of the defendant's behavior, since it is inimical to the antitrust laws to award damages for losses stemming from acts that do not hurt competition. Atlantic Richfield Co. v. USA Petroleum, Inc., 495 U.S. 328, 334 (1990). If the injury flows from aspects of the defendant's conduct that are beneficial or neutral to competition, there is no antitrust injury, even if the defendant's conduct is illegal per se. See id.
>
> In deciding whether the plaintiff was injured by an anticompetitive aspect or effect of the defendant's behavior, care must be taken in defining "competition." Competition consists of rivalry among competitors. Hasbrouck v. Texaco, Inc., 842 F.2d 1034, 1040 (9th Cir.1987). Of course, conduct that eliminates rivals reduces competition. But reduction of competition does not invoke the Sherman Act until it harms consumer welfare. Products Liab. Ins. Agency, Inc. v. Crum & Forster Ins. Cos., 682 F.2d 660, 663 (7th Cir.1982); see Reiter v. Sonotone Corp., 442 U.S. 330, 343 (1979) (Congress designed the Sherman Act as a "consumer welfare

---

[1] This matter can be decided on the record. Defendants' request for oral argument is DENIED.

ORDER GRANTING IN PART
PROVIDER DEFENDANTS'
MOTION TO DISMISS

-3-

prescription") (quoting Robert H. Bork, The Antitrust Paradox 66 (1978)). Consumer welfare is maximized when economic resources are allocated to their best use[,] National Gerimedical Hosp. and Gerontology Ctr. v. Blue Cross of Kansas City, 452 U.S. 378, 387–88 & n. 13 (1981), and when consumers are assured competitive price and quality[,] Products Liab. Ins., 682 F.2d at 663–64. Accordingly, an act is deemed anticompetitive under the Sherman Act only when it harms both allocative efficiency and raises the prices of goods above competitive levels or diminishes their quality. Cf. Brook Group Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 223-24 (1993) (below-cost pricing is not anticompetitive in itself because, although it causes allocative inefficiency, it brings lower aggregate prices in the market).

Rebel Oil Co. v. Atl. Richfield Co., 51 F.3d 1421, 1433 (9th Cir. 1995).

Plaintiff alleges that the various defendants have conspired to impose eligibility requirements on the CCS fellowship program and the other 1,500 graduate medical education ("GME") programs offered at the University of Washington that have anti-competitive effects. In particular, plaintiff accuses the various defendants of conspiring

> in multiple forms of monopolies (horizontal, vertical, oligopoly) relating to the practice of CCS in the United States. Defendants intentionally collude to exclude DOs from practicing CCS for no legitimate purpose and to unreasonably restrain trade and competition in the CCS medical specialty field.
>
> By virtue of the eligibility requirements they have set for GME training positions that require applicants for [American Board of Thoracic Surgery ("ABTS")] board certification to have completed Accreditation Council for Graduate Medical Education ("ACGME") accredited training in general surgery and a thoracic surgery fellowship which Defendants collectively control and operate, Defendants are unreasonably excluding competition, restraining trade, and depriving the public from access to DOs trained in CCS. They are also depriving DOs of their civil right to practice in their chosen profession.

Dkt. # 115 at ¶¶ 183-84. Plaintiff alleges no facts in support of the conclusory statements regarding "excluding competition" or "restraining trade." That he was not

ORDER GRANTING IN PART
PROVIDER DEFENDANTS'
MOTION TO DISMISS
-4-

chosen for the single CCS fellowship position at the University of Washington simply means that he (and all of the other unsuccessful applicants) lost out in a competition to another competitor. The chosen fellow will go on to be trained as a congenital cardiac surgeon and offer his or her services in the marketplace. There is nothing about that scenario that suggests an unreasonable restraint on trade or competition.

Plaintiff's antitrust theory is based on the allegation that the fellowship program's selection criteria results in consumers being deprived of choice, namely the choice to be treated by a CCS who was trained as a DO. Dkt. # 115 at ¶¶ 194 and 198. There are a number of problems with that theory. First, plaintiff's own allegations show that not to be the case. DOs can become congenital cardiac surgeons as long as they choose an ACGME-accredited residency following medical school. Plaintiff chose a different path by choosing a general surgery residency that was accredited by the American Osteopathic Board of Surgery rather than the ACGME. His allegations show that it was his program selection post-medical school that made him ineligible for the CCS fellowship, not his training as a DO. Second, there are no allegations that could support a plausible inference that consumer welfare is adversely affected by selection criteria that favor doctors trained as MDs. Plaintiff does not allege that DOs performing CCS charge less than their MD counterparts or that DOs are more skilled surgeons or better doctors. In fact, plaintiff's theory is that there is no difference between a DO and an MD as applicants to the CCS fellowship and that defendants' selection criteria are arbitrary. A simple disagreement about the wisdom of a school's eligibility requirements or an employer's hiring criteria is not an antitrust violation. Absent allegations that economic resources are not being allocated to their best use and that consumers are either paying too much or receiving lesser quality because of defendants' practices, plaintiff's antitrust

ORDER GRANTING IN PART
PROVIDER DEFENDANTS'
MOTION TO DISMISS
-5-

claim fails as a matter of law.[2]

**B. RCW 70.41.235**

Plaintiff has asserted a claim under RCW 70.41.235 which provides:

> A hospital that provides health services to the general public may not discriminate against a qualified doctor of osteopathic medicine and surgery licensed under chapter 18.57 RCW, who has applied to practice with the hospital, solely because that practitioner was board certified or eligible under an approved osteopathic certifying board instead of a board certified or eligible respectively under an approved medical certifying board.

Plaintiff alleges that the University of Washington School of Medicine discriminated against him based on the fact that he is board certified by the American Osteopathic Board of Surgery rather than the American Board of Thoracic Surgeons in violation of RCW 70.41.235. There is no private right of action under RCW 70.41, however. In arriving at this conclusion, the Court applies the basic rules of statutory construction applied by the courts of Washington. The objective "is to execute the intent of the Legislature, which must be primarily determined from the language of the statute itself. When words in a statute are plain and unambiguous, this Court is required to assume the Legislature meant what it said and apply the statute as written." State ex rel. Evergreen Freedom Found. v. Wash. Educ. Ass'n, 140 Wn.2d 615, 630-31 (2000). The Court will not, however, apply a literal reading of a statute if it would result in "unlikely, absurd, or strained consequences ... The first role of a court is to examine the language of a statute while adhering to the Legislature's intent and purpose in enacting it." Fraternal Order of Eagles, Tenino Aerie No. 564 v. Grand Aerie of Fraternal Order of Eagles, 148 Wn.2d

---

[2] To the extent plaintiff has asserted an antitrust claim under the Washington Consumer Protection Act, those provisions are the functional equivalent of Sherman Act § 1. Hairston v. Pac-10 Conference, 893 F. Supp. 1485, 1493 (W.D. Wash. 1994). The state antitrust claim therefore fails for the same reasons as the federal antitrust claim.

ORDER GRANTING IN PART
PROVIDER DEFENDANTS'
MOTION TO DISMISS

-6-

224, 239-40 (2002). In seeking the legislature's intent, the Court considers "the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole," giving effect to all of the language wherever possible. State v. LG Elecs., Inc., 185 Wn. App. 123, 132 (2014).

RCW 70.41.235 is part of a chapter aimed at hospital licensing and regulation. "The primary purpose of this chapter is to promote safe and adequate care of individuals in hospitals through the development, establishment and enforcement of minimum hospital standards for maintenance and operation." To accomplish these purposes, the legislature provided for "[t]he enforcement by the department of the standards, rules, and regulations established under this chapter." RCW 70.41.010. See also RCW 70.41.040. The Department of Health is authorized to deny, suspend, revoke, or modify a hospital's license if it fails or refuses to comply with the requirements of the chapter. RCW 70.41.130. The statute specifies the procedures for notice and a right to an adjudicative proceeding regarding any such adverse licensing action. Id. While the Department has a mandatory obligation to investigate only complaints or notifications that concern patient well-being (RCW 70.41.155), it is authorized to investigate and respond to any violation of the chapter if it chooses to do so. There is no mention of a private right of action, nor any indication that the legislature intended that a private person should be permitted to interfere with or upend the department's licensing determinations. The ordinary meaning of the language at issue and the context of the chapter as a whole suggest that the legislature intended what it said, namely that the Department of Health is authorized to enforce the standards set forth in RCW 70.41

ORDER GRANTING IN PART
PROVIDER DEFENDANTS'
MOTION TO DISMISS

-7-

through the proscribed powers and procedures.[3]

**C. Washington Public Records Act**

Plaintiff has adequately alleged a cause of action under the Washington Public Records Act ("PRA"). Although defendants have not outright denied plaintiff's request for documents, his PRA claim is based on an unreasonable delay in the production of responsive records, not on a refusal to produce the records. Pursuant to RCW 42.56.550(2):

> Upon the motion of any person who believes that an agency has not made a reasonable estimate of the time that the agency requires to respond to a public record request or a reasonable estimate of the charges to produce copies of public records, the superior court in the county in which a record is maintained may require the responsible agency to show that the estimate it provided is reasonable. The burden of proof shall be on the agency to show that the estimate it provided is reasonable.

Plaintiff has alleged facts showing that a substantive response to his November 16, 2017, records request has been postponed twice, first for four months and then four ten months. The new estimated response date is February 19, 2019, fifteen months after the request was first made. Plaintiff asserts that this delay is not reasonable. Defendants say, "[n]ot so." Dkt. # 135 at 14. This is a fact issue that cannot be resolved in the context of a motion to dismiss.

**D. Negligent Infliction of Emotional Distress**

"As with any claim sounding in negligence, where a plaintiff brings suit based on negligent infliction of emotional distress we test the plaintiff's negligence claim against the established concepts of duty, breach, proximate cause, and damage or injury."

---

[3] The Court also notes that plaintiff was not "licensed under chapter 18.57 RCW" at the time his application for the CCS fellowship was denied, nor was he seeking hospital privileges. Even if plaintiff could pursue a private right of action to enforce RCW 70.41.235, the statute does not apply to the facts of this case.

ORDER GRANTING IN PART
PROVIDER DEFENDANTS'
MOTION TO DISMISS

-8-

Snyder v. Med. Serv. Corp. of E. Wash., 145 Wn. 2d 233, 243 (2001) (internal quotation marks and citation omitted). Plaintiff alleges that defendants had a duty to refrain from violating the antitrust laws and from discriminating against him in violation of RCW 70.41.235. Assuming for purposes of this motion that the statutes upon which plaintiff relies created a duty running from defendants to plaintiff, he has not adequately alleged breaches of those duties for the reasons discussed above.

**E. Civil Conspiracy**

"To establish a common law claim for civil conspiracy, [plaintiff is] required to prove by clear, cogent, and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means[] and (2) the conspirators entered into an agreement to accomplish the conspiracy. . . . Mere suspicion or commonality of interests is insufficient to prove a conspiracy." Bonneville v. Pierce Cty., 148 Wash. App. 500, 518 (2008) (internal quotation marks and citations omitted). Plaintiff does not dispute that if he has failed to allege a viable antitrust claim or conduct that violates RCW 70.41.235, his conspiracy claim based on the same conduct fails as a matter of law.

**F. Declaratory Judgment**

Plaintiff seeks a number of declarations, most of which involve a finding that defendants discriminate against DOs. The declaratory judgment claim fails to the extent it rests on claims plaintiff has not adequately alleged. Plaintiff also seeks a declaration that defendants have violated the PRA, however, a demand for relief which defendants ignore.

For all of the foregoing reasons, the provider defendants' motion to dismiss (Dkt. # 118) is GRANTED in part and DENIED in part. All claims asserted against the

ORDER GRANTING IN PART
PROVIDER DEFENDANTS'
MOTION TO DISMISS
-9-

defendants affiliated with the University of Washington (named in the Second Amended Complaint as University of Washington Medicine, UW Medicine/NW, University of Washington Medical Center, University of Washington School of Medicine, Paul Ramsey, Lester Permut, Children's University Medical Group, and Seattle Children's Hospital) are hereby DISMISSED with the exception of the PRA claim and related declaratory judgment claim asserted against the University of Washington entities (the PRA claim against the individual provider defendants is dismissed). Although most of plaintiff's claims will be dismissed, this litigation continues. In this context, leave to amend will not be blindly granted. If plaintiff believes he can, consistent with its Rule 11 obligations, amend the complaint to remedy the pleading and legal deficiencies identified above, he may file a motion to amend and attach a proposed pleading for the Court's consideration.

Dated this 9th day of November, 2018.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART
PROVIDER DEFENDANTS'
MOTION TO DISMISS

-10-